IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CT-3222-D

| | |
|---|---|
| MYRON RODERICK NUNN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NORA D. HUNT, et al., )<br>)<br>Defendants. ) | **ORDER** |

On November 4, 2011, Myron Roderick Nunn ("Nunn" or "plaintiff"), a state inmate, filed this action under 42 U.S.C. § 1983 [D.E. 1]. Nunn proceeds pro se and in forma pauperis [D.E. 2]. On November 30, 2011, and January 20, 2012, Nunn filed motions to amend his complaint, along with copies of grievances [D.E. 7, 10]. On December 20, 2011, Nunn filed a motion for a preliminary injunction [D.E. 8]. On January 13 and March 13, 2012, Nunn filed motions challenging the court's collection of filing fees [D.E. 9, 11]. As explained below, the court grants the motion to amend the complaint and denies the remaining motions.

I.

Courts must review complaints in civil actions in which prisoners seek relief from a governmental entity or officer, and dismiss a complaint if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ." 28 U.S.C. § 1915A(a)–(b)(1). A case is frivolous if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Legally frivolous claims are based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Factually frivolous claims lack an "arguable basis" in fact.

Neitzke, 490 U.S. at 325. The standard used to evaluate the sufficiency of the pleading is flexible, and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not undermine the "requirement that a pleading contain 'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

A party may amend his pleading once as a matter of course within twenty-one days after service, or, if the pleading requires a response, within twenty-one days after service of the response or service of a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend his pleading only with the written consent of the opposing party or with leave of court. Fed. R. Civ. P. 15(a)(2). Because Nunn's complaint is subject to review under section 1915A, no defendant has been served. Accordingly, Nunn's motions to amend [D.E. 7, 10] are granted, and the court reviews these additional materials together with the original complaint to determine whether Nunn has stated a claim upon which relief may be granted.

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Additionally, a section 1983 plaintiff must allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850

2

(4th Cir. 1985). Deliberate indifference to a prisoner's serious medical needs violates his Eighth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prove such a claim, Nunn "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle, 429 U.S. at 104). In cases involving the denial of or delay in providing medical treatment to a prisoner, the prison official must know of and disregard an objectively serious condition, medical need, or risk of harm. See, e.g., Sosebee v. Murphy, 797 F.2d 179, 182–83 (4th Cir. 1986). A prisoner, however, is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim. See, e.g., Estelle, 429 U.S. at 105–06.

The court first addresses Nunn's claims arising at Albemarle Correctional Institution ("Albemarle").[1] A court determines the proper venue for an action pursuant to 28 U.S.C. § 1391. Section 1391(b) governs venue in actions in which jurisdiction is not premised solely on diversity of citizenship. See 28 U.S.C. § 1391(b). Specifically, section 1391(b) provides that such actions may

> be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Id.

Albemarle is located in Stanly County, which is in the Middle District of North Carolina. N.C. Dep't of Pub. Safety, Division of Prisons, http://www.doc.state.nc.us/dop/prisons/albemarle

---

[1] Although Nunn names Johnston Correctional Institution ("Johnston") Superintendent Joseph Hall ("Hall") as a defendant, [D.E. 1] 3, Nunn's complaint lacks any allegations arising at Johnston. Thus, the court dismisses Hall as a defendant.

3

.htm (last visited Sept. 6, 2012); see 28 U.S.C. § 113(b). Thus, venue is proper in that district. See 28 U.S.C. § 1391(b). Additionally, Nunn's attempt to bring a single action against defendants at different institutions implicates Rule 20(a)(2) of the Federal Rules of Civil Procedure, which states that

> [p]ersons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 20(a)(2) does not give to a plaintiff a license to join multiple defendants in a single lawsuit when the plaintiff's claims against the defendants are unrelated. See, e.g., George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348, 1350–51 (9th Cir. 1997); Robinson v. Johnson, Civil Action No. 3:07CV449, 2009 WL 874530, at *1 (E.D. Va. Mar. 26, 2009) (unpublished); Showalter v. Johnson, Civil Action No. 7:08cv00276, 2009 WL 1321694, at *4–5 (W.D. Va. May 12, 2009) (unpublished). Accordingly, the court dismisses without prejudice plaintiffs' claims arising at Albemarle, along with defendant Hassan.

The court next addresses Nunn's additional claims contained in his second amended complaint [D.E. 10]. These claims arose after Nunn commenced the original action. The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 83–85 (2006); Porter v. Nussle, 534 U.S. 516, 524 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."

4

Porter, 534 U.S. at 532; see Jones v. Bock, 549 U.S. 199, 211 (2007). A prisoner must exhaust administrative remedies regardless of the relief offered through administrative procedures. See Booth v. Churner, 532 U.S. 731, 740–41 (2001). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones, 549 U.S. at 211. Filing suit before exhausting administrative remedies dooms the action. See, e.g., Ford v. Johnson, 362 F.3d 395, 398–99 (7th Cir. 2004); Johnson v. Jones, 340 F.3d 624, 627–28 (8th Cir. 2003).

When an inmate files suit early, courts typically dismiss the action without prejudice. See, e.g., Ford, 362 F.3d at 401; Johnson v. Cannon, C.A. No. 4:08-776-PMD, 2010 WL 936706, at *8 (D.S.C. Mar. 15, 2010) (unpublished), aff'd, 390 F. App'x 256 (4th Cir. 2010) (per curiam) (unpublished); Shouse v. Madsen, Civil Action No. 7:09-cv-00461, 2010 WL 276543, at *1 (W.D. Va. Jan. 19, 2010) (unpublished). A dismissal without prejudice allows the prisoner an opportunity to exhaust the administrative process and then file a new suit, if the prisoner so chooses. Accordingly, because Nunn failed to exhaust the claims in his second amended complaint before filing suit, the court dismisses these claims without prejudice.

Nunn alleges that on several occasions, he has been deprived of his medically prescribed boots. [D.E. 1] 3; [D.E. 1-1] 1–3. Nunn alleges that on October 4, 2008, while he was incarcerated at Columbus Correctional Institution ("Columbus"), sergeant Goodwin confiscated his boots. [D.E. 1] 3. However, on October 10, 2008, defendant Hunt, the superintendent at Columbus, ordered Goodwin to return the boots. Id. On October 23, 2008, Nunn was transferred to Tabor Correctional Institution ("Tabor"), "at which time receiving staff confiscated [his] medical boots." Id. Nunn complained, and a nurse at Tabor requested correctional staff to return the boots, but defendant Kenworthy, the Tabor superintendent, "and the nurse supervisor at Tabor . . . refused to allow the return of said boots, due to Tabor . . . being a 'bootless' prison," even though they were aware that

5

Hunt "had [previously] determined that said boots be returned to the plaintiff on October 10, 2008 . . . ." Id. 4; [D.E. 1-1] 1. As a result, Nunn "walked in pain for (60) days" until his transfer on December 23, 2008 to Harnett Correctional Institution ("Harnett"). [D.E. 1-1] 1. While at Harnett, "non-medical officials interfered with the treatment that [a Harnett] physician" and a podiatrist ordered by refusing to provide Nunn with the prescribed boots. Id. 2. On March 24, 2011, Nunn returned to Columbus. Id. 3. On June 14, 2011, the Columbus physician renewed Nunn's prescription for boots. Id. On July 1, 2011, a Columbus nurse "issued [Nunn] a size '13' gel insoles," which Nunn rejected because they were not size 10½. Id. The nurse "instructed [Nunn] to find a razor . . . and cut the insoles down to a size 10½." Id. On September 16, 2011, Columbus medical staff informed Nunn that he would not receive his boots until December; however, Nunn received the boots on September 19, 2011. Id. 4; see also [D.E. 1-2] 4 (letter from Hunt to Nunn), 8 (memo to Nunn).

Nunn also alleges that in November 2008, at the order of a Tabor physician, he "had his left big toenail removed by a podiatrist . . . who prescribed pain medication and antibiotics." [D.E. 1] 3–4. However, Tabor medical staff did not administer the medication for four days. Id. 4. Although Nunn "declared a medical emergency[, a]ssistant unit manager Mr. Williams told [Nunn] via staff to submit a sick call, because his pain wasn't life threat[en]ing." Id. Nunn then "brought this medical neglect to the attention of Captain Gilchrist, who subsequently ordered medical to commence [post-surgery] treatment." Id.

As for Nunn's allegation that he did not receive medication at Tabor for four days after having a toenail removed, Nunn has failed to state a claim. Nunn does not allege that he suffered any injury as a result of not receiving the medication. Moreover, when Nunn brought the issue to the attention of a Tabor captain, the captain ordered medical treatment for Nunn. Accordingly, the

6

court dismisses this claim as frivolous.

As for Nunn's allegations concerning being deprived of his boots at both Harnett and Columbus, Nunn has failed to state a claim for deliberate indifference to a serious medical need. Nunn does not allege that he suffered any injury at either Columbus or Harnett by being denied his boots. Moreover, Nunn alleges that Superintendent Hunt—the sole defendant Nunn names from Columbus—ordered staff to return Nunn's boots to him. Additionally, it appears that the delay in receiving his boots at Columbus was not the result of deliberate misconduct, but by a backlog in supply, and medical staff offered Nunn a temporary treatment alternative (gel insoles), which he rejected.

As for Nunn's allegations that he was deprived of his boots at Tabor and "walked in pain for (60) days," [D.E. 1-1] 1, it does not clearly appear from the face of the complaint that Nunn is not entitled to relief on this claim. Thus, the claim is allowed to proceed. However, the only defendant Nunn names in connection with this claim is Tabor Superintendent George Kenworthy ("Kenworthy"). To hold a supervisor liable for a constitutional injury inflicted by a subordinate, a plaintiff must prove three things: "(1) that the supervisor had actual or constructive knowledge that [a] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response . . . was so inadequate as to show deliberate indifference to or tacit authorization of the [subordinates' conduct]; and (3) that there [is] an affirmative causal link between the supervisor's inaction and the [plaintiff's] constitutional injury . . . ." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (quotations omitted). Nunn has not stated any facts or provided any evidence to establish these elements as to Kenworthy. Nunn may amend his complaint to name specific Tabor officers or employees who deprived him of his rights as set forth in this claim. Nunn has until September 28, 2012 to amend

7

his complaint to provide the names of any such individuals, and must specifically explain how any such individuals were involved in the actions of which he complains. Nunn's failure to comply will result in the dismissal of this action. Nunn is warned that amendment of his complaint is limited to naming these individuals and explaining how they were involved in the actions at Tabor of which he complains. Nunn may not name other individuals not involved in the claim or make additional allegations concerning other prisons or defendants.

To the extent Nunn seeks to bring "an action for medical malpractice," [D.E. 1-1] 4, rather than a claim for deprivation of his constitutional rights pursuant to section 1983, Nunn has failed to comply with North Carolina Rule of Civil Procedure 9(j).

Rule 9(j) states,

> Any complaint alleging medical malpractice by a health care provider as defined in [N.C. Gen. Stat. §] 90-21.11 in failing to comply with the applicable standard of care under [N.C. Gen. Stat. §] 90-21.12 shall be dismissed unless:
>
>> (1) The pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
>>
>> (2) The pleading specifically asserts that the medical care has been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or
>>
>> (3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. R. Civ. P. 9(j).

The North Carolina General Assembly enacted Rule 9(j) in 1995 "in part, to protect defendants from having to defend frivolous medical malpractice actions by ensuring that before a

8

complaint for medical malpractice is filed, a competent medical professional has reviewed the conduct of the defendants and concluded that the conduct did not meet the applicable standard of care." Estate of Waters v. Jarman, 144 N.C. App. 98, 100, 547 S.E.2d 142, 144 (2001) (quotation omitted); see Thigpen v. Ngo, 355 N.C. 198, 203–04, 558 S.E.2d 162, 166 (2002). Failure to comply with Rule 9(j) is ground for dismissal of a state medical-malpractice claim filed in federal court. See, e.g., Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004); Frazier v. Angel Med. Ctr., 308 F. Supp. 2d 671, 676–77 (W.D.N.C. 2004); Moore v. Pitt Cnty. Mem'l Hosp., 139 F. Supp. 2d 712, 713–14 (E.D.N.C. 2001).

The North Carolina legislature did not create an exception for ignorance or good cause in enacting Rule 9(j). Additionally, the North Carolina legislature declined to provide discretion to the court if a litigant offers an excuse for his noncompliance. See N.C. R. Civ. P. 9(j). "Rule 9(j) unambiguously requires a trial court to dismiss a complaint if the complaint's allegations do not facially comply with the rule's heightened pleading requirements." Barringer v. Forsyth Cnty. Wake Forest Univ. Baptist Med. Ctr., 197 N.C. App. 238, 255, 677 S.E.2d 465, 477 (2009). Moreover, Nunn's status as a prisoner does not excuse his failure to comply with Rule 9(j)'s pre-filing certification requirement. See, e.g., Hill v. United States, No. 5:08-CT-3070-D, 2010 WL 3075495, at *15 (E.D.N.C. Aug. 5, 2010) (unpublished) (collecting cases); Stevenson v. N.C. Dep't of Corr., 714 S.E.2d 435, 436–37 (N.C. Ct. App. 2011), appeal dismissed, 707 S.E.2d 234 (N.C. 2011).

Rule 9(j) provides one narrow exception: a litigant is excused from Rule 9(j)'s pre-filing certification requirement if negligence may be established under the doctrine of res ipsa loquitur. See N.C. R. Civ. P. 9(j)(3). This doctrine applies "only when the occurrence clearly speaks for itself." Diehl v. Koffer, 140 N.C. App. 375, 378, 536 S.E.2d 359, 362 (2000) (quotation and emphases omitted); see, e.g., Tice v. Hall, 310 N.C. 589, 593, 313 S.E.2d 565, 567 (1984) (surgical

sponge left in patient's body); Schaffner v. Cumberland Cnty. Hosp. Sys., Inc., 77 N.C. App. 689, 690–94, 336 S.E.2d 116, 117–19 (1985) (patient's hand burned during ear surgery); Hyder v. Weilbaecher, 54 N.C. App. 287, 292, 283 S.E.2d 426, 429 (1981) (stainless steel wire left in patient).

Nunn has not alleged circumstances supporting the application of res ipsa loquitur to his claim. Accordingly, because Nunn failed to comply with Rule 9(j) or plead facts falling within the res ipsa loquitur exception, the court dismisses Nunn's medical malpractice claim.

Next, the court addresses Nunn's motion for a preliminary injunction [D.E. 8]. Nunn filed this motion in four separate cases. Id. 1. Nunn asserts that on December 11, 2011, he "experienced a sudden deterioration of vision" and seeks "an emergency injunction ordering the North Carolina Department of Correction [sic] to approve and issue . . . prescription eye glasses, provide quality eye care, and not delay, deny, or interfer[e] with the eye physician[']s orders." Id. 2. The substantive standard for granting a temporary restraining order is the same as that for entering a preliminary injunction. See, e.g., U.S. Dep't of Labor v. Wolf Run Mining Co., 452 F.3d 275, 281 n.1 (4th Cir. 2006). A court may grant a temporary restraining order or a preliminary injunction if the moving party demonstrates "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). In Winter, the Supreme Court rejected the "standard that allowed the plaintiff to demonstrate only a possibility of irreparable harm because that standard was inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009) (quotations omitted), vacated on other grounds, 130 S. Ct. 2371 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam).

Nunn has not established that he is likely to succeed on the merits, that he is likely to suffer irreparable harm absent injunctive relief, that the balance of equities tips in his favor, or that an injunction is in the public interest. Thus, Nunn has failed to meet his burden of proof. Accordingly, the court denies Nunn's motion for a preliminary injunction [D.E. 8].

As for Nunn's challenge to the payment of filing fees in this case [D.E. 9, 11],[2] Nunn asserts that the North Carolina Department of Corrections is deducting more than 20 percent from his trust account to pay his filing fees in several cases, and seeks a refund of $93. [D.E. 9] 1–2; [D.E. 11] 2–4. The PLRA provides that "prisoner[s] shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1); see Torres v. O'Quinn, 612 F.3d 237, 241 (4th Cir. 2010) ("Congress [has] required that indigent prisoners filing lawsuits be held responsible for the full amount of filing fees."). Moreover, in the Fourth Circuit, prisons may not deduct more than 20 percent of a prisoner's monthly income to pay filing fees, and may not withdraw any money when an inmate's trust account falls below $10. Torres, 612 F.3d at 242 & n.2. As Nunn acknowledges, the remedy for a violation of Torres is a temporary abatement in the collection of filing fees from an inmate's trust account. [D.E. 9] 1; [D.E. 11] 1; see Torres, 612 F.3d at 253. A review of the docket indicates that Nunn has made a single payment towards his filing fee in this case: on December 7, 2011, Nunn paid $13. Accordingly, the court denies Nunn's motions for a refund of the filing fee.

II.

In sum, the court GRANTS plaintiff's motions to amend [D.E. 7, 10], and DENIES plaintiff's remaining motions [D.E. 8–9, 11]. The court DISMISSES the claims in plaintiff's second amended complaint [D.E. 10] without prejudice for failure to exhaust administrative remedies, and

---

[2] Nunn filed the first motion in seven different cases, [D.E. 9] 1, and it appears from the second motion that he is litigating the issue of filing fees in the United States Court of Appeals for the Fourth Circuit. See [D.E. 11] 5 (certificate of service).

11

DISMISSES any claim arising at Albemarle, along with defendant Hassan, without prejudice pursuant to 28 U.S.C. § 1391(b). As to defendants Hunt, Hall, and Kenworthy, the court DISMISSES plaintiff's claims arising at Columbus and Harnett as frivolous under 28 U.S.C. § 1915(e)(2)(B). Plaintiff's claim for deliberate indifference to a serious medical need at Tabor remains, and the court permits Nunn until September 28, 2012 to amend his claim for deliberate indifference to a serious medical need at Tabor to name specific Tabor officers or employees who were actually responsible for this claim. Nunn shall provide each defendant with fair notice of the claims asserted against each defendant. Nunn is WARNED that if he does not file an amended complaint that complies with Rule 8(a) of the Federal Rules of Civil Procedure and this order by September 28, 2012, the court will dismiss the action without prejudice. If Nunn files an appropriate amended complaint, the court will then conduct frivolity review. The Clerk of Court is directed to maintain management of the action.

SO ORDERED. This _6_ day of September 2012.

JAMES C. DEVER III
Chief United States District Judge